**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF NORTH DAKOTA**
**NORTHEASTERN DIVISION**

FILED

NOV 2 1 2005

EDWARD J. KLECKER, CLERK
U.S. DISTRICT COURT-NORTH DAKOTA

| | | |
|---|---|---|
| UNIVERSITY OF NORTH DAKOTA, | ) | Judge Ralph R. Erickson |
| | ) | Magistrate Judge Karen K. Klein |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ANSWER AND COUNTERCLAIMS OF** |
| JAMES HARDIE RESEARCH PTY, LTD., an | ) | **JAMES HARDIE RESEARCH PTY, LTD.;** |
| Australian Corporation, JAMES HARDIE | ) | **JAMES HARDIE BUILDING PRODUCTS,** |
| BUILDING PRODUCTS, INC., a Nevada | ) | **INC.; AND JAMES HARDIE INT'L** |
| Corporation, JAMES HARDIE INT'L | ) | **FINANCE B.V. TO FIRST AMENDED** |
| FINANCE B.V., a Netherlands Corporation, | ) | **COMPLAINT OF UNIVERSITY OF NORTH** |
| certain FURNACE EQUIPMENT, certain | ) | **DAKOTA** |
| FURNACE EQUIPMENT DESIGNS, certain | ) | |
| FURNACE SPECIFICATIONS, and DOES 1- | ) | Civil File No. A2-04-152 |
| 10, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| JAMES HARDIE BUILDING PRODUCTS, | ) | |
| INC., and JAMES HARDIE INT'L FINANCE | ) | |
| B.V., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil File No. A2-05-44 |
| v. | ) | |
| | ) | |
| ENERGY & ENVIRONMENTAL RESEARCH | ) | |
| CENTER, and DOES 1 through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

Defendants JAMES HARDIE RESEARCH PTY, LTD.; JAMES HARDIE BUILDING PRODUCTS, INC.; AND JAMES HARDIE INT'L FINANCE B.V. ("JH") hereby answer the first amended complaint of Plaintiff UNIVERSITY OF NORTH DAKOTA ("UND"), filed on November 10, 2005, as follows:

## NATURE OF ACTION

1.      JH admits that this is an action for a temporary restraining order, preliminary injunction and permanent injunction.  JH denies any remaining allegations contained in Paragraph 1 of the First Amended Complaint.

2.      JH admits that this is an action for damages under the North Dakota Uniform Trade Secrets Act.  JH denies that N.D.C.C. § 45 corresponds to that Act, and denies any remaining allegations contained in Paragraph 2 of the First Amended Complaint.

3.      JH admits that this is an action for breach of contract.  JH denies any remaining allegations contained in Paragraph 3 of the First Amended Complaint.

4.      JH admits that this purports to be an *in rem* action to determine ownership of certain furnace equipment, designs and specifications.  JH denies any remaining allegations contained in Paragraph 4 of the First Amended Complaint.

## THE PARTIES

5.      JH admits that Plaintiff is University of North Dakota ("UND").  JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 5 of the First Amended Complaint, and therefore denies the same.

6.      JH admits that UND purports to be bringing suit on behalf of the Energy and Environmental Research Center ("EERC"), but denies that EERC is a division of UND.

7.      JH admits that EERC purports to be founded in 1951, but denies the remaining allegations in Paragraph 7 of the First Amended Complaint.

8.      JH admits that EERC is a research facility, but lacks sufficient knowledge or information to form a belief as to the truth or falsity of the remaining allegations contained in Paragraph 8 of the First Amended Complaint, and therefore denies the same.

9.      JH admits that UND purports to believe that EERC is the world's leading research and development center for coal based technologies.

10.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 10 of the First Amended Complaint, and therefore denies the same.

11.     JH denies the allegations contained in Paragraph 11 of the First Amended Complaint.

12.     JH admits the allegations contained in Paragraph 12 of the First Amended Complaint.

13.     JH admits the allegations contained in Paragraph 13 of the First Amended Complaint.

14.     JH admits the allegations contained in Paragraph 14 of the First Amended Complaint.

15.     JH admits the allegations contained in Paragraph 15 of the First Amended Complaint.

16.     JH admits the allegations contained in Paragraph 16 of the First Amended Complaint.

17.     JH denies the allegations contained in Paragraph 17 of the First Amended Complaint.

18.     JH denies the allegations contained in Paragraph 18 of the First Amended Complaint.

19.     JH admits that this purports to be an *in rem* action to determine title to certain furnace equipment, designs and specifications located within Grand Forks, North Dakota

20.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 20 of the First Amended Complaint, and therefore denies the same.

21.     JH denies the allegations contained in Paragraph 21 of the First Amended Complaint.

22.     JH denies the allegations contained in Paragraph 22 of the First Amended Complaint.

23.     JH denies the allegations contained in Paragraph 23 of the First Amended Complaint.

24.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 24 of the First Amended Complaint, and therefore denies the same.

25.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 25 of the First Amended Complaint, and therefore denies the same.

26.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 26 of the First Amended Complaint, and therefore denies the same.

27.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 27 of the First Amended Complaint, and therefore denies the same.

## BACKGROUND OF THE CASE

28.     JH admits the allegations contained in Paragraph 28 of the First Amended Complaint.

29.     JH admits the allegations contained in Paragraph 29 of the First Amended Complaint.

30.     JH admits the allegations contained in Paragraph 30 of the First Amended Complaint.

31.     JH admits that cenospheres have application for building materials and that building materials produced with cenospheres may have increased strength and reduced weight, thereby potentially improving the strength-to-weight ratio.  JH denies the remaining allegations contained in Paragraph 31 of the First Amended Complaint.

32.     JH admits that cenospheres may contribute to buoyancy, insulation, shrinkage and warping properties in at least some applications.

33.     JH admits the allegations contained in Paragraph 33 of the First Amended Complaint.

34.     JH admits the allegations contained in Paragraph 34 of the First Amended Complaint.

35.     JH denies the allegations contained in Paragraph 35 of the First Amended Complaint.

36.     JH admits the allegations contained in Paragraph 36 of the First Amended Complaint.

37.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 37 of the First Amended Complaint, and therefore denies the same.

38.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 38 of the First Amended Complaint, and therefore denies the same.

39.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 39 of the First Amended Complaint, and therefore denies the same.

40.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 40 of the First Amended Complaint, and therefore denies the same.

41.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 41 of the First Amended Complaint, and therefore denies the same.

42.     JH admits that in the year 2000 JH contacted Dr. Steven Benson to consider certain co-operative research projects.  JH denies the remaining allegations contained in paragraph 42 of the First Amended Complaint.

43.     JH admits that it entered into a contract with EERC for an initial project entitled "Survey of North American Power Stations" which included a literature search and a survey on cenosphere production from coal burning power plants in North America.   JH denies the remaining allegations contained in paragraph 43 of the First Amended Complaint.

44.     JH admits that a report was provided to JH by EERC on or about March 30, 2001.   JH denies the remaining allegations contained in paragraph 44 of the First Amended Complaint.

45.     JH admits the allegations contained in Paragraph 45 of the First Amended Complaint.

46.     JH admits that between approximately February 2001 and July 2001 EERC and JH Research and JH Building conducted negotiations concerning various matters relating to their cooperative research including ownership of intellectual property.   JH denies the remaining allegations contained in Paragraph 46 of the First Amended Complaint.

47.     JH admits the allegations contained in Paragraph 47 of the First Amended Complaint.

48.     JH admits that it was a purpose of the Contract that EERC would perform confidential research and development involving fly ash and the production of cenospheres from fly ash.   JH denies the remaining allegations contained in Paragraph 48 of the First Amended Complaint.

49.     JH admits the allegations contained in Paragraph 49 of the First Amended Complaint.

50.     JH admits that Article 13 of the Contract included the passage set out in Paragraph 50 of the First Amended Complaint.   JH denies the remaining allegations contained in Paragraph 50 of the First Amended Complaint.

51.     JH admits that there are at least twenty-two written amendments to the Contract.   JH denies the remaining allegations contained in Paragraph 51 of the First Amended Complaint.

52.     JH admits that, on or around March 5, 2003, the parties agreed to an add-on to the Contract.   JH denies the remaining allegations contained in Paragraph 52 of the First Amended Complaint.

53.     JH denies the allegations contained in Paragraph 53 of the First Amended Complaint.

54.     JH denies the allegations contained in Paragraph 54 of the First Amended Complaint.

55.     JH denies the allegations contained in Paragraph 55 of the First Amended Complaint.

56.     JH denies the allegations contained in Paragraph 56 of the First Amended Complaint.

57.     JH denies the allegations contained in Paragraph 57 of the First Amended Complaint.

58.     JH denies the allegations contained in Paragraph 58 of the First Amended Complaint.

59.     JH denies the allegations contained in Paragraph 59 of the First Amended Complaint.

60.     JH denies the allegations contained in Paragraph 60 of the First Amended Complaint.

61.     JH denies the allegations contained in Paragraph 61 of the First Amended Complaint.

62.     JH denies the allegations contained in Paragraph 62 of the First Amended Complaint.

63.     JH denies the allegations contained in Paragraph 63 of the First Amended Complaint.

64.     JH denies the allegations contained in Paragraph 64 of the First Amended Complaint.

65.     JH denies the allegations contained in Paragraph 65 of the First Amended Complaint.

66.     JH denies the allegations contained in Paragraph 66 of the First Amended Complaint.

67.     JH denies that EERC trade secrets would be or were included or disclosed in the patent applications, and JH admits that no prior notice was provided to EERC as none was required.  JH denies any remaining allegations contained in Paragraph 67 of the First Amended Complaint.

68.     JH admits the allegations contained in Paragraph 68 of the First Amended Complaint.

69.     JH admits that it has patent applications pending.  JH denies the remaining allegations contained in Paragraph 69 of the First Amended Complaint.

70.     JH admits the allegations contained in Paragraph 70 of the First Amended Complaint.

71.     JH denies the allegations contained in Paragraph 71 of the First Amended Complaint.

72.     JH denies the allegations contained in Paragraph 72 of the First Amended Complaint.

73.     JH denies the allegations contained in Paragraph 73 of the First Amended Complaint.

74.     JH denies the allegations contained in Paragraph 74 of the First Amended Complaint.

75.     JH denies the allegations contained in Paragraph 75 of the First Amended Complaint.

76.     JH denies the allegations contained in Paragraph 76 of the First Amended Complaint.

77.     JH denies the allegations contained in Paragraph 77 of the First Amended Complaint.

78.     JH denies the allegations contained in Paragraph 78 of the First Amended Complaint.

79.     JH denies the allegations contained in Paragraph 79 of the First Amended Complaint.

80.     JH admits it requested that EERC return JH's furnace.   JH denies the remaining allegations contained in Paragraph 80 of the First Amended Complaint.

81.     JH admits the allegations contained in Paragraph 81 of the First Amended Complaint.

82.     JH denies the allegations contained in Paragraph 82 of the First Amended Complaint.

83.     JH denies the allegations contained in Paragraph 83 of the First Amended Complaint.

84.     JH admits the allegations contained in Paragraph 84 of the First Amended Complaint.

85.     JH admits the allegations contained in Paragraph 85 of the First Amended Complaint.

86.     JH admits the allegations contained in Paragraph 86 of the First Amended Complaint.

87.     JH admits the allegations contained in Paragraph 87 of the First Amended Complaint.

88.     JH admits the allegations contained in Paragraph 88 of the First Amended Complaint.

89.     JH admits that JH decided to file its First Amended Complaint in California.   JH denies the remaining allegations contained in Paragraph 89 of the First Amended Complaint.

90.     JH denies the allegations contained in Paragraph 90 of the First Amended Complaint.

91.     JH admits the allegations contained in Paragraph 91 of the First Amended Complaint.

### COUNT ONE

### MISAPPROPRIATION OF NORTH DAKOTA TRADE SECRETS

92.     JH repeats, realleges and fully incorporates herein by reference its responses to Paragraphs 1 through 91 of the First Amended Complaint.

93.     JH admits the allegations contained in Paragraph 93 of the First Amended Complaint.

94.     JH denies that N.D.C.C. § 45 corresponds to the North Dakota Uniform Trade Secrets Act, but admits the remaining allegations contained in Paragraph 94 of the First Amended Complaint.

95.     JH denies the allegations contained in Paragraph 95 of the First Amended Complaint.

96.     JH denies the allegations contained in Paragraph 96 of the First Amended Complaint.

97.     JH denies the allegations contained in Paragraph 97 of the First Amended Complaint.

98.     JH denies the allegations contained in Paragraph 98 of the First Amended Complaint.

99.     JH denies the allegations contained in Paragraph 99 of the First Amended Complaint.

100.     JH denies the allegations contained in Paragraph 100 of the First Amended Complaint.

101.   JH denies the allegations contained in Paragraph 101 of the First Amended Complaint.

102.   JH denies the allegations contained in Paragraph 102 of the First Amended Complaint.

103.   JH denies the allegations contained in Paragraph 103 of the First Amended Complaint.

104.   JH denies the allegations contained in Paragraph 104 of the First Amended Complaint.

105.   JH denies the allegations contained in Paragraph 105 of the First Amended Complaint.

## COUNT TWO

### BREACH OF NORTH DAKOTA CONTRACT

106.   JH repeats, realleges and fully incorporates herein by reference its responses to Paragraphs 1 through 105 of the First Amended Complaint.

107.   JH admits the allegations contained in Paragraph 107 of the First Amended Complaint.

108.   JH admits that this is a claim for breach of contract.  JH denies the remaining allegations contained in Paragraph 108 of the First Amended Complaint.

109.   JH denies the allegations contained in Paragraph 109 of the First Amended Complaint.

110.   JH denies the allegations contained in Paragraph 110 of the First Amended Complaint.

111.   JH denies the allegations contained in Paragraph 111 of the First Amended Complaint.

112.   JH denies the allegations contained in Paragraph 112 of the First Amended Complaint.

113.   JH denies the allegations contained in Paragraph 113 of the First Amended Complaint.

114.   JH denies the allegations contained in Paragraph 114 of the First Amended Complaint.

## COUNT THREE

### IN REM ACTION TO DECIDE OWNERSHIP OF CERTAIN FURNACE EQUIPMENT

115.   JH repeats, realleges and fully incorporates herein by reference its responses to Paragraphs 1 through 114 of the First Amended Complaint.

116.   JH admits the allegations contained in Paragraph 116 of the First Amended Complaint.

117.   JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 117 of the First Amended Complaint, and therefore denies the same.

118.     JH lacks sufficient knowledge or information to form a belief as to the truth or falsity of the allegations contained in Paragraph 118 of the First Amended Complaint, and therefore denies the same.

119.     JH denies the allegations contained in Paragraph 119 of the First Amended Complaint.

120.     JH denies the allegations contained in Paragraph 120 of the First Amended Complaint.

121.     JH denies the allegations contained in Paragraph 121 of the First Amended Complaint.

122.     JH denies the allegations contained in Paragraph 122 of the First Amended Complaint.

123.     JH denies the allegations contained in Paragraph 123 of the First Amended Complaint.

124.     JH denies the allegations contained in Paragraph 124 of the First Amended Complaint.

125.     JH admits that UND is requesting the judgment expressed in Paragraph 125 of the First Amended Complaint.

**COUNT FOUR**

**<u>BREACH OF CONTRACT</u>**

126.     JH repeats, realleges and fully incorporates herein by reference its responses to Paragraphs 1 through 125 of the First Amended Complaint.

127.     JH admits that Article 10 of the Contract states: "If Contractor shall fail to fulfill one or more of its obligations under this Agreement or breach any one or more of the terms and conditions of this Agreement, Sponsor may, upon its election, at any time terminate this Agreement by giving not less than thirty (30) days' prior written notice of termination to Contractor specifying any such breach or default. . . .   Either party may terminate this Agreement for convenience by thirty (30) days' written notice to the other party." JH denies the remaining allegations contained in Paragraph 127 of the First Amended Complaint.

128.     JH denies the allegations contained in Paragraph 128 of the First Amended Complaint.

129.     JH denies the allegations contained in Paragraph 129 of the First Amended Complaint.

130.     JH denies the allegations contained in Paragraph 130 of the First Amended Complaint.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

131.    Plaintiff's claims are barred by the doctrines of fraud and unclean hands.

### Second Affirmative Defense

132.    Plaintiff's claims fail to state a claim upon which relief can be granted.

### Third Affirmative Defense

133.    Plaintiff, by its conduct or the conduct of others, is estopped from raising each and every cause of action or claim or any of them stated in the First Amended Complaint.

### Fourth Affirmative Defense

134.    Plaintiff, by its conduct or the conduct of others, waived its rights to raise each and every cause of action or claim or any of them stated in the First Amended Complaint.

### Fifth Affirmative Defense

135.    The data and information Plaintiff alleges to have been misappropriated does not satisfy the definition of "Trade secret" under § 47-25.1-01.4 of the North Dakota Century Code.

### Sixth Affirmative Defense

136.    Any alleged failure by James Hardie entities to maintain the confidentiality of Plaintiff's "trade secrets and other confidential information" is excused to avoid frustrating the purpose of the Contract.

### Seventh Affirmative Defense

137.    Any alleged failure by James Hardie entities to maintain the confidentiality of Plaintiff's "trade secrets and other confidential information" was caused by Plaintiff's failure to perform its obligations under the contract, including its failure to notify James Hardie entities of any intellectual property "potentially patentable or otherwise protectable and whether it relates to the building and construction industry or not."

### Eighth Affirmative Defense

138.    To the extent Plaintiff establishes liability and any damages, its damages must be reduced by any and all consequences Plaintiff unreasonably failed to avoid.

## COUNTERCLAIMS

### JURISDICTION AND VENUE

1.      Defendants JAMES HARDIE RESEARCH PTY., LTD. ("JHR"), JAMES HARDIE BUILDING PRODUCTS, INC. ("JHBP") and JAMES HARDIE INTERNATIONAL FINANCE B.V. ("JHIF") (collectively "Defendants") bring these counterclaims against the UNIVERSITY OF NORTH DAKOTA and the ENERGY & ENVIRONMENTAL RESEARCH CENTER (a business within the University of North Dakota, on whose behalf the University of North Dakota has commenced this action) (collectively "UND") for copyright infringement arising under 17 U.S.C. § 501; for replevin arising under the statutory and common law; for injury to rights arising under North Dakota Century Code § 9-10-01; for unfair competition under the common law of the State of North Dakota; for breach of contract; and for declaratory relief arising under 28 U.S.C. § 2201.

2.      This Court has subject matter jurisdiction under 15 U.S.C. § 1121(a) and 28 U.S.C. §§ 1331, 1338(a), 1338(b), & 1367(a).

3.      This Court also has subject matter jurisdiction under 28 U.S.C. § 1332(a), the parties being citizens of different states and in which citizens or subjects of a foreign state are additional parties, and the matter in controversy exceeding the sum or value of $75,000, exclusive of interest and costs.

4.      Venue is proper in this Judicial District under 28 U.S.C. §§ 1400(a) and 1441(a).

### GENERAL ALLEGATIONS

**A.      Background About The James Hardie Family Of Companies**

5.      The James Hardie family of companies (collectively, "James Hardie") pioneered the development of fiber cement technology in the building products industry.

6.      JHBP owns and manages James Hardie's manufacturing operations and research and development efforts in the United States. Plaintiff JHBP is the leading manufacturer in the United States of fiber cement siding, trim, tile underlayment, and pipe products. Plaintiff JHBP conducts all of its research and development activities at its facility in Fontana, California.

7.     JHIF is the owner and manager of all of James Hardie's patents, copyrights, trademarks, trade secrets, and other intellectual property, including the intellectual property used by Plaintiff JHBP in the manufacture of fiber cement products.

**B.     James Hardie's Agreements With EERC**

8.     Innovation is vital to James Hardie's maintenance of its leadership position in the fiber cement industry.  Consequently, James Hardie invests significant amounts of money (in excess of $30 million per year) on research and development activities.  James Hardie conducts all of its research and development activities under strict confidentiality, and James Hardie owns all of the intellectual property conceived and created through those research and development activities.

9.     As a part of James Hardie's ongoing research and development efforts, in 2000 James Hardie entered into a written contract (the 2000 Agreement) with EERC for EERC to perform certain confidential research for James Hardie relating to coal ash.  The 2000 Agreement incorporated by its terms a written Confidentiality Undertaking entered into earlier in 2000 by EERC for the benefit of James Hardie (the Confidentiality Agreement).

10.     In 2001 James Hardie entered into another written contract (the 2001 Agreement) with EERC for EERC to perform certain confidential research and testing work for James Hardie involving coal ash.  Under the terms of the 2001 Agreement EERC agreed to consider all information disclosed to it by James Hardie and all results of the said research and testing work as confidential and to treat it as such.

11.     James Hardie turned to EERC to perform confidential research and testing services as part of a larger research project undertaken by James Hardie because of EERC's expertise in coal ash and other coal combustion by-products.  On its website, EERC states that it:

> is recognized internationally for understanding, developing, and demonstrating environmentally friendly uses for coal ash, a by-product of burning coal to generate electricity.  Coal combustion by-products (CCBs) are used today in innovative ways to establish soils, reinforce concrete, and strengthen aluminum car parts.

12.     Simultaneous with the research and testing that EERC was conducting for James Hardie under the 2000 and 2001 Agreements, James Hardie itself conducted significant independent research and development activities related to the same project.

**C.**     **Research Under The 2000 Agreement**

13.     Under the terms of the 2000 Agreement EERC conducted research and created and provided to James Hardie a report containing confidential information owned by James Hardie and subject to the terms of the 2000 Agreement and the Confidentiality Agreement.

**D.**     **James Hardie's Pilot Furnace**

14.     James Hardie and EERC expanded the scope of research and testing conducted by EERC under the 2001 Agreement by entering into various addendums to the 2001 Agreement.

15.     James Hardie's research and development activities (including those contracted from EERC) progressed to a point that it was able to develop and test a new product manufacturing and commercialization process by conducting test manufacturing on a larger scale. James Hardie designed James Hardie's Pilot Furnace for the purposes of conducting this further testing.

16.     In February of 2003, James Hardie provided EERC with designs and specifications for James Hardie's Pilot Furnace. On or about March 5, 2003, James Hardie and EERC entered into an "Add-On" to the 2001 Agreement, which provided that James Hardie would pay additional funds to EERC for EERC's assembly and commissioning of James Hardie's Pilot Furnace according to the designs and specifications that James Hardie supplied to EERC.

17.     In November of 2003, pursuant to the 2001 Agreement and at James Hardie's expense (in excess of $280,000), EERC completed the assembly and commissioning of James Hardie's Pilot Furnace at EERC's facility in North Dakota. During the course of the 2001 Agreement, James Hardie developed formulations for precursor material that could be used in the Pilot Furnace to create combustion by-products. James Hardie hired and paid third parties to create precursor material and arranged to have it shipped to EERC's facilities. EERC now possesses approximately ten to fifteen 55-gallon drums of the precursor material, and EERC contributed no labor, no funds, nor anything else toward the making of that material. EERC also still possesses small jars of laboratory-prepared samples that James Hardie provided to EERC during the course of the 2001 Agreement for furnace-based testing. Those samples were prepared solely by James Hardie. During the course of the 2001 Agreement, EERC tested James Hardie's Pilot Furnace for Defendants, and still possesses product made from those tests. EERC also still

possesses Sweco brand sieves (screens) provided to EERC by James Hardie for screening materials during the course of the 2001 Agreement.

18.     James Hardie's total payment to EERC for services provided under the 2001 Agreement exceeds $1,600,000.

19.     In February of 2004, EERC completed its research under the 2001 Agreement, and James Hardie satisfied all of its duties and obligations to EERC under the 2001 Agreement.   Nevertheless, EERC has refused to return to James Hardie the designs and specifications for James Hardie's Pilot Furnace or the furnace itself.  In addition, EERC has refused to return to James Hardie the approximately ten to fifteen 55-gallon drums of precursor material, the small jars of laboratory-prepared samples, product obtained from tests, or the Sweco screening sieves.

20.     The designs and specifications for James Hardie's Pilot Furnace, and, indeed the furnace itself, constitute JHIF's intellectual property, and they are protected by trade secret law, copyright law, and other legal doctrines, and by EERC's obligations under the 2001 Agreement to maintain the confidentiality of Plaintiffs' intellectual property.

21.     James Hardie's Pilot Furnace is a roughly cylindrical object approximately 20 feet tall, approximately 1.5 to 2 feet in diameter, and weighing approximately 2200 pounds.  James Hardie's Pilot Furnace does not include various systems and testing equipment that EERC has attached to James Hardie's Pilot Furnace as a part of the commissioning and testing process. James Hardie seeks the return of the James Hardie Pilot Furnace so it may be re-installed into JHBP's facility in Fontana, California. James Hardie also seeks the return of the designs and specifications for James Hardie's Pilot Furnace, the approximately ten to fifteen 55-gallon drums of precursor material, the small jars of laboratory-prepared samples, product obtained from tests, and the Sweco screening sieves.

22.     JHIF is the owner of registered copyrights in technical drawings of James Hardie's Pilot Furnace (the "JH Pilot Furnace Drawings"), including the following:   Registration No. VAu 644-161, titled "Assembly"; Registration No. VAu 644-162, titled "Cross Section"; Registration No. VAu 644-163, titled "Slag Trap 2"; Registration No. VAu 644-164, titled "Slag Trap"; Registration No. VAu 644-165, titled "Furnace Lower External Column"; Registration No. VAu 644-166, titled "Furnace Upper External

Column"; Registration No. VAu 644-167, titled "Furnace Internal Column"; Registration No. VAu 644-168, titled "Furnace Exhaust Elbow"; Registration No. VAu 644-169, titled "Exhaust Spool"; Registration No. VAu 644-170, titled "3D Entire Furnace"; Registration No. VAu 644-171, titled "Claw Burner Feeder 2"; Registration No. VAu 644-172, titled "Claw Burner Feeder 1"; and Registration No. VAu 644-173, titled "Expander Zone Section."   JHIF's copyrights convey exclusive rights and privileges in, among other things, text, drawings, and pictorial features contained in the designs and specifications for James Hardie's Pilot Furnace.

**E.**     **James Hardie's Intellectual Property**

23.     In August, 2002, James Hardie filed three patent applications relating to cenosphere technology useful in the building and construction industry which James Hardie developed and owns. EERC recently copied those three patent applications virtually verbatim, named its own personnel as additional inventors, and, on January 7, 2005, filed those copied patent applications with the U.S. Patent and Trademark Office. In filing each of the copied patent applications, EERC created a legal relationship to the respective, earlier James Hardie patent application by claiming priority to and thus seeking to benefit from the earlier filing date of the James Hardie patent application.

24.     James Hardie owns any and all intellectual property in cenosphere and cenosphere process technology that was developed in connection with EERC's confidential research and testing performed for James Hardie pursuant to the 2001 Agreement. Nevertheless, after completion of its work for James Hardie under the 2001 Agreement, EERC filed a total of at least seven patent applications to improperly claim cenosphere and cenosphere process technology developed under the 2001 Agreement as its own. James Hardie first learned of the at least seven patent applications in January of 2005.

25.     The aforesaid patent applications filed by EERC wrongly assert ownership of James Hardie's intellectual property and/or disclosed James Hardie's confidential information in breach variously of the terms of the 2000 Agreement, the Confidentiality Agreement and the 2001 Agreement (the Agreements).

## II. FIRST COUNTERCLAIM
### Copyright Infringement

26.     Defendants reallege each and every allegation set forth in paragraphs 1-25, above, and incorporate them herein by this reference.

27.     JHIF has complied in all respects with 17 U.S.C. §§ 102, *et seq.*, and JHIF is the owner of copyrights in the JH Pilot Furnace Drawings, which contain copyrightable subject matter under 17 U.S.C. §§ 101, *et seq.*

28.     Specifically, JHIF is the owner of Registration No. VAu 644-161, titled "Assembly"; Registration No. VAu 644-162, titled "Cross Section"; Registration No. VAu 644-163, titled "Slag Trap 2"; Registration No. VAu 644-164, titled "Slag Trap"; Registration No. VAu 644-165, titled "Furnace Lower External Column"; Registration No. VAu 644-166, titled "Furnace Upper External Column"; Registration No. VAu 644-167, titled "Furnace Internal Column"; Registration No. VAu 644-168, titled "Furnace Exhaust Elbow"; Registration No. VAu 644-169, titled "Exhaust Spool"; Registration No. VAu 644-170, titled "3D Entire Furnace"; Registration No. VAu 644-171, titled "Claw Burner Feeder 2"; Registration No. VAu 644-172, titled "Claw Burner Feeder 1"; and Registration No. VAu 644-173, titled "Expander Zone Section."

29.     JHIF is informed and believes, and thereupon alleges, that UND, without authority, copied JHIF's copyrighted works in the JH Pilot Furnace Drawings.

30.     As a direct consequence of UND's copyright infringement, JHIF has suffered, and will continue to suffer, irreparable injury unless and until UND is enjoined from its wrongful acts.

31.     As a direct consequence of UND's copyright infringement, JHIF has been damaged in an amount not presently ascertainable, and JHIF has suffered, and will continue to suffer, irreparable injury. Such damage and irreparable injury will continue and increase unless and until UND is enjoined from its wrongful acts.

## III. SECOND COUNTERCLAIM
### Replevin

32.     Defendants reallege each and every allegation set forth in paragraphs 1-31, above, and incorporate them herein by this reference.

33.     Defendants are, and at all times herein mentioned were, the owners of personal property described as James Hardie's Pilot Furnace and the designs and specifications therefor.  Defendants also are, and at all times herein mentioned were, the owners of personal property described as approximately ten to fifteen 55-gallon drums of precursor material, small jars of laboratory-prepared samples, product obtained from combustion tests, and Sweco screening sieves.

34.     Defendants are, and at all times herein mentioned were, entitled to the immediate and exclusive possession of the personal property described above.

35.     On or about March 26, 2004, Defendants demanded that UND return James Hardie's Pilot Furnace and the designs and specifications therefore to them.  UND refused to return that property after Defendants' demand, and UND continues to withhold possession of that property from Defendants in violation of Defendants' right to immediate and exclusive possession thereof.

36.     On or about June 14, 2005, Defendants demanded that UND return James Hardie's approximately ten to fifteen 55-gallon drums of precursor material, James Hardie's small jars of laboratory-prepared samples, James Hardie's product obtained from combustion tests, and James Hardie's Sweco screening sieves.  On or around June 23, 2005, UND refused to return that property following Defendants' demand, and UND continues to withhold possession of that property from Defendants in violation of Defendants' right to immediate and exclusive possession thereof.

37.     During, and as a proximate result of, UND's wrongful possession and detention of the personal property described above, Defendants suffered the loss of the use and enjoyment of their personal property, including damages in an amount not presently ascertained but to be determined at trial.

38.     In wrongfully possessing and detaining the property described above, UND's conduct was willful and was intended to cause injury to Defendants.  Accordingly, Defendants are entitled to exemplary damages pursuant to California Civil Code § 3294(a).

## IV. <u>THIRD COUNTERCLAIM</u>
### <u>Injury to Property and Infringement upon Rights</u>

39.     Defendants reallege each and every allegation set forth in paragraphs 1-38, above, and incorporate them herein by this reference.

40.     At the time of committing the acts alleged herein, UND owed Defendants a duty to refrain from injuring Defendants' property or infringing upon any of Defendants' rights. UND's actions alleged herein have breached those duties and have injured Defendants' property and infringed upon Defendants' rights in violation of North Dakota Century Code § 9-10-01 in an amount not presently ascertained but to be determined at trial. Further, by these acts, UND has irreparably injured Defendants, for which injury Defendants have no adequate remedy at law, and such injury will continue unless permanently enjoined by this Court.

41.     Defendants are informed and believe, and thereupon allege, that UND has engaged in willful acts to injure Defendants' property and infringe upon Defendants' rights and that those acts constitute fraud, oppression, and malice. Accordingly, Defendants are entitled to exemplary damages pursuant to California Civil Code § 3294(a).

## V. FOURTH COUNTERCLAIM
### Unfair Competition

42.     Defendants reallege each and every allegation set forth in paragraphs 1-41, above, and incorporate them herein by this reference.

43.     Defendants are informed and believe, and thereupon allege, that at the time of committing the acts alleged herein, UND had full knowledge that it did not own James Hardie's Pilot Furnace nor the designs and specifications therefore and that it was under a duty to maintain the confidentiality of James Hardie's confidential information.

44.     Defendants are informed and believe, and thereupon allege, that UND's actions alleged herein constitute unfair competition in violation of the common law of the State of North Dakota.

45.     Defendants are informed and believe, and thereupon allege, that UND's acts of unfair competition have injured and violated the rights of Defendants in an amount not presently ascertained but to be determined at trial. Further, by these acts, UND has irreparably injured Defendants, for which injury Defendants have no adequate remedy at law, and such injury will continue unless enjoined by this Court.

46.     Defendants are informed and believe, and thereupon allege, that UND's willful acts of unfair competition constitute fraud, oppression, and malice.   Accordingly, Defendants are entitled to exemplary damages pursuant to California Civil Code § 3294(a).

## VI. FIFTH COUNTERCLAIM
### Breach of Contract

47.     Defendants reallege each and every allegation set forth in paragraphs 1-46, above, and incorporate them herein by this reference.

48.     The Agreements require UND to safeguard and maintain the confidentiality of Defendants' trade secrets and other proprietary information.

49.     The 2001 Agreement also requires UND to make available to Defendants in a timely manner all documents (hard copy or electronic) created by UND that relate to the intellectual property developed under the 2001 Agreement.

50.     The 2001 Agreement also requires UND to take all steps and sign all documents that may be desirable or necessary for Defendants to secure title to the intellectual property, patentable or not, developed under the 2001 Agreement.

51.     The 2001 Agreement also requires UND to notify Defendants of any inventions, discoveries, computer software, improvements, or other intellectual property developed under the 2001 Agreement that EERC reasonably believes are potentially patentable or otherwise protectable and whether such intellectual property relates to the building and construction industry or not.

52.     Defendants are informed and believe, and thereupon allege, that UND has breached, or threatens to breach, its obligation to safeguard and maintain the confidentiality of Defendants' trade secrets and other proprietary information through UND's handling of James Hardie's Pilot Furnace and the designs and specifications therefor, including UND's refusal to return James Hardie's Pilot Furnace and the designs and specifications therefore.

53.     UND has also breached its obligation to safeguard and maintain the confidentiality of Defendants' trade secrets and other proprietary and confidential information by disclosing such information in patent applications submitted by UND to the United States Patent and Trademark Office.

-18-

54.     UND has also breached the 2001 Agreement by refusing to make available to Defendants in a timely manner all documents (hard copy or electronic) created by UND that relate to the intellectual property developed under the 2001 Agreement, despite Defendants' demand for UND to do so.

55.     UND has also breached the 2001 Agreement by refusing to take all steps and sign all documents that may be desirable or necessary for Defendants to secure title to the intellectual property, patentable or not, developed under the 2001 Agreement, despite Defendants' demand for UND to do so.

56.     UND has also breached the 2001 Agreement by refusing to notify Defendants of any inventions, discoveries, computer software, improvements, or other intellectual property developed under the 2001 Agreement that EERC reasonably believes are potentially patentable or otherwise protectable and whether such intellectual property relates to the building and construction industry or not.

57.     Defendants have fully performed all of their obligations and have satisfied all of their conditions for performance under the Agreements.

58.     Defendants are informed and believe, and thereupon allege, that unless restrained and enjoined by this Court, UND will continue to breach the Agreements.

59.     By reason of the above actions, and as a foreseeable, direct, and proximate result of UND's breach of the Agreements, Defendants have suffered irreparable injury to their rights and pecuniary damages, and Defendants will continue to suffer such injury, loss, and damage unless and until Defendants are granted specific performance of the 2001 Agreement.

60.     Defendants are informed and believe, and thereupon allege, that UND has derived, received, and will continue to derive and receive from the aforesaid breach of contract, gains, profits, and advantages, many of which are not presently known to Defendants.

61.     By reason of the above actions, and as a foreseeable, direct, and proximate result of UND's breach of the Agreements, Defendants have been, and will continue to be, greatly damaged in an amount not presently ascertained but to be determined at trial.  Further, such damage will continue and increase unless and until Defendants are granted specific performance of the 2001 Agreement.

62.     Defendants are informed and believe, and thereupon allege, that UND's acts will continue to cause substantial irreparable harm to Defendants unless and until further breach of contract by UND is preliminarily and permanently enjoined.

63.     Defendants are therefore entitled to a temporary restraining order, a preliminary injunction, a permanent injunction, and specific performance, as well as damages as provided by law.

## VII. SIXTH COUNTERCLAIM
## Misappropriation of Trade Secrets

64.     Defendants reallege each and every allegation set forth in paragraphs 1-63, above, and incorporate them herein by this reference.

65.     Defendants hold valuable trade secrets including those in the nature, selection and formation of materials useful for cenosphere creation and production, and also in the identity and location of power plants and their properties related to cenospheres.

66.     Defendants' trade secrets have independent economic value in processes associated with the use of cenospheres in commercial products.  Defendants' trade secrets also derive considerable value from the fact that they are not generally known.

67.     Defendants have taken and are now taking steps to maintain the secrecy of their trade secrets, such as, for example, requiring visitors to sign in to Defendants' facilities and to wear a visitor badge for the duration of each such visit.  Defendants also conduct ongoing employee training in confidentiality, and require employees to sign confidentiality agreements.  Defendants negotiate non-disclosure agreements from third parties to whom Defendants may communicate trade secrets or who may otherwise be exposed to Defendants trade secrets.

68.     Consistent with its efforts to maintain the secrecy of its trade secrets, Defendants negotiated contractual promises from UND to maintain the confidentiality of Defendants' trade secrets that UND acquired through the confidential research it conducted for Defendants as required by the Agreements.

69.     UND misappropriated Defendants' trade secrets, in violation of North Dakota Century Code Chapter 47-25.1-01 et seq., by including Defendants' trade secrets, without authorization or

knowledge of Defendants, in at least two international patent applications. UND filed the at least two international patent applications with the U.S. receiving office of the U.S. Patent and Trademark Office, knowing that the applications would be published, thereupon resulting in the public disclosure of the entire content of the applications, including Defendants' trade secrets.

70.     Defendants are informed and believe, and thereupon allege, that UND's misappropriation of Defendants' trade secrets will cause irreparable injury to Defendants and will continue to cause irreparable injury to Defendants unless UND is preliminarily and permanently enjoined from any and all acts of misappropriating Defendants' trade secrets, including acts of pursuing any patent applications, including the two international patent applications referenced above, that disclose any of Defendants' trade secrets.

71.     Defendants are informed and believe, and thereupon allege, that UND's misappropriation of Defendants' trade secrets has been malicious and willful.

## VIII.  SEVENTH COUNTERCLAIM
### Declaratory Relief

72.     Defendants reallege each and every allegation set forth in paragraphs 1-71, above, and incorporate them herein by this reference.

73.     An actual controversy has arisen and now exists between Defendants and UND concerning the respective rights and duties in that Defendants contend (among other things) that: (a) James Hardie's Pilot Furnace represents and embodies Defendants' intellectual property; (b) Defendants own James Hardie's Pilot Furnace; (c) Defendants own all of the intellectual property developed under the 2001 Agreement; and (d) Defendants have the exclusive right to use the intellectual property developed under the 2001 Agreement for all uses of such intellectual property identified by Defendants and commercialized or licensed, whereas UND disputes those contentions and contends (among other things) that:  (a) James Hardie's Pilot Furnace does not represent and embody Defendants' intellectual property; (b) Defendants do not own James Hardie's Pilot Furnace; (c) Defendants do not own any of the intellectual property developed under the 2001 Agreement; and (d) Defendants do not have the

exclusive right to use the intellectual property developed under the 2001 Agreement for all uses of such intellectual property identified by Defendants and commercialized or licensed.

74.     Defendants desire a judicial determination of their rights and duties and a declaration as to which party's interpretation of the 2001 Agreement is correct.

75.     A judicial determination is necessary and appropriate at this time under the circumstances in order that Defendants may ascertain their rights and duties under the 2001 Agreement.

76.     By reason of the above actions, and as a foreseeable, direct, and proximate result of UND's incorrect interpretation of the 2001 Agreement, Defendants have been, and will continue to be, greatly damaged in an amount not presently ascertained but to be determined at trial.   Further, such damage will continue and increase unless and until Defendants are granted declaratory relief in their favor.

## IX.  DEMAND FOR JUDGMENT

WHEREFORE, Defendants demand judgment against UND as follows:

For a judgment in favor of Defendants and against UND on all claims for relief alleged herein;

That JHIF's copyright rights in the JH Pilot Furnace Drawings, including Registration No. VAu 644-161, titled "Assembly"; Registration No. VAu 644-162, titled "Cross Section"; Registration No. VAu 644-163, titled "Slag Trap 2"; Registration No. VAu 644-164, titled "Slag Trap"; Registration No. VAu 644-165, titled "Furnace Lower External Column"; Registration No. VAu 644-166, titled "Furnace Upper External Column"; Registration No. VAu 644-167, titled "Furnace Internal Column"; Registration No. VAu 644-168, titled "Furnace Exhaust Elbow"; Registration No. VAu 644-169, titled "Exhaust Spool";  Registration  No. VAu 644-170,  titled  "3D Entire  Furnace";  Registration No. VAu 644-171, titled "Claw Burner Feeder 2"; Registration No. VAu 644-172, titled "Claw Burner Feeder 1"; and Registration No. VAu 644-173, titled "Expander Zone Section," be deemed valid and willfully infringed by UND in violation of 17 U.S.C. § 501;

That UND, its respective officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with UND, be forthwith preliminarily and thereafter permanently enjoined, pursuant to 17 U.S.C. § 502, from:

(1)     Copying (including copying into a drawing for a furnace or other apparatus), reproducing, creating derivative works of, distributing, displaying, using, marketing, or selling the JH Pilot Furnace Drawings or any substantially similar variation of the JH Pilot Furnace Drawings, in any manner;

(2)     Constructing any furnace or other apparatus depicted in or based upon the JH Pilot Furnace Drawings;

(3)     Otherwise infringing JHIF's copyright rights;

(4)     Falsely representing that the JH Pilot Furnace Drawings or derivatives thereof originate in any way from UND;

(5)     Disclosing or permitting to be disclosed to any third party any confidential information contrary to the terms of the Agreements;

(6)     Unfairly competing with Defendants in any manner whatsoever;

That UND, its respective officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with UND, be required to deliver up for impoundment all drawings, disks, electronic files and media, materials, literature, advertisements, and any other materials embodying the JH Pilot Furnace Drawings or derivative or portions thereof, pursuant to 17 U.S.C. § 503(a);

That UND, its respective officers, agents, servants, employees, and attorneys, and all those persons in active concert or participation with UND, be required to deliver up for destruction or other reasonable disposition all drawings, disks, electronic files and media, materials, literature, advertisements, and any other materials embodying the JH Pilot Furnace Drawings or derivative or portions thereof, pursuant to 17 U.S.C. § 503(b);

That UND be required to cease construction of any furnace or other apparatus based upon or derived in any part from the JH Pilot Furnace Drawings;

For possession of the personal property described above, including James Hardie's Pilot Furnace and the designs and specifications therefor, and the approximately ten to fifteen 55-gallon drums of

precursor material, the small jars of laboratory-prepared test material, all product from combustion testing, and the Sweco screening sieves;

For damages against UND according to proof;

For a judgment that UND be held to have injured Defendants' property and infringed upon Defendants' rights in violation of North Dakota Century Code § 9-10-01;

For a judgment that UND be held to have engaged in unfair competition in violation of North Dakota common law;

That the Court issue a temporary restraining order, thereafter a preliminary injunction, and thereafter a permanent injunction against UND, enjoining and restraining UND, and all others in active concert or participation with UND, from competing unfairly with Defendants in any manner whatsoever;

That UND be directed to file with this Court and serve on Defendants within thirty (30) days after the issuance of the injunction, a report in writing, under oath, setting forth in detail the manner and form in which UND has complied with the Court's order;

For a judgment that UND be held to have breached the Agreements with Defendants under common law;

That UND be ordered to account to Defendants for any and all profits derived by UND and all damages sustained by Defendants as a consequence of the acts complained of herein;

That UND be ordered to pay over to Defendants all damages that Defendants have sustained as a consequence of UND's acts complained of herein, subject to proof at trial, and that Defendants be awarded the profits that UND derived by reason of said acts, all as determined by said accounting;

That UND be ordered to pay over to Defendants statutory damages for copyright infringement, pursuant to 17 U.S.C. § 504(c);

For a declaration that:  (1) James Hardie's Pilot Furnace represents and embodies Defendants' intellectual property; (2) Defendants own James Hardie's Pilot Furnace; (3) Defendants own all of the intellectual property developed under the 2001 Agreement; and (4) Defendants have the exclusive right to use the intellectual property developed under the 2001 Agreement for all uses of such intellectual property identified by Defendants and commercialized or licensed;

For an award to Defendants of exemplary damages from UND pursuant to California Civil Code § 3294;

For a judgment that UND has misappropriated Defendants' trade secrets;

That UND be enjoined from any further acts of misappropriation of Defendants' trade secrets, that UND be ordered to take all reasonable and prudent steps to prevent any non-published pending patent application containing any of Defendants' trade secrets from being published, and for an award of exemplary damages in accordance with North Dakota Century Code § 47-25.1-03;

For an award to Defendants of any and all other specific, general, and compensatory damages according to proof;

For an award to Defendants of their reasonable costs, attorneys' fees, and expenses of this suit; and

That Defendants be awarded such other and further relief as the Court may deem just and proper.

Respectfully submitted,

Dated: _11/21/05_____

By: _____

Mark R. Hanson (#04697)
NILLES LAW FIRM
1800 Radisson Tower
201 North Fifth Street
P.O. Box 2626
Fargo, ND 58108-2626
Telephone: 701-237-5544
Facsimile: 701-280-0762

Attorneys for Defendants JAMES HARDIE RESEARCH PTY, LTD.; JAMES HARDIE BUILDING PRODUCTS, INC.; and JAMES HARDIE INT'L FINANCE B.V.

2071480
111505