

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| UNIVERSITY OF NORTH DAKOTA, | ) | Civil Action No.: A2-04-152 |
| | ) | Honorable Ralph R. Erickson |
| Plaintiff, | ) | Magistrate Judge Karen K. Klein |
| | ) | |
| vs. | ) | |
| | ) | |
| JAMES HARDIE RESEARCH PTY, LTD., | ) | **UNIVERSITY OF NORTH DAKOTA'S** |
| an Australian Corporation, | ) | **ANSWER AND COUNTERCLAIMS** |
| JAMES HARDIE BUILDING PRODUCTS, INC., | ) | **TO THIRD AMENDED COMPLAINT** |
| a Nevada Corporation, | ) | **FOR COPYRIGHT INFRINGEMENT,** |
| JAMES HARDIE INT'L FINANCE B.V., | ) | **REPLEVIN, INJURY TO PROPERTY** |
| a Netherlands Corporation, | ) | **AND INFRINGEMENT OF RIGHTS,** |
| certain FURNACE EQUIPMENT, | ) | **UNFAIR COMPETITION,** |
| certain FURNACE EQUIPMENT DESIGNS, | ) | **BREACH OF CONTRACT,** |
| certain FURNACE SPECIFICATIONS, and | ) | **MISAPPROPRIATION OF** |
| DOES 1-10, | ) | **TRADE SECRETS AND** |
| | ) | **DECLARATORY RELIEF** |
| Defendants. | ) | |
| | ) | |
| | ) | |
| ——————————————— | ) | |
| | ) | |
| JAMES HARDIE BUILDING PRODUCTS, INC. | ) | Civil Action No.: A2-05-44 |
| and JAMES HARDIE INT'L FINANCE B.V., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| ENERGY & ENVIRONMENTAL RESEARCH | ) | |
| CENTER, | ) | |
| | ) | |
| Defendants. | ) | |

University of North Dakota ("UND"), for its Answer and Counterclaims to the

Third Amended Complaint for Copyright Infringement, Replevin, Injury to Property and

Infringement of Rights, Unfair Competition, Breach of Contract, Misappropriation of

Trade Secrets and Declaratory Relief admits, denies and alleges as follows:

1.      Except as otherwise specifically admitted, clarified, or qualifiedly admitted,

UND denies each and every allegation in the Third Amended Complaint.

2.      With respect to Paragraphs 1, 2, 3 and 4, they are jurisdictional allegations requiring no response.

3.      UND is without sufficient information to admit or deny the allegations contained in Paragraph 5, and therefore it denies the same.

4.      UND admits the allegations contained in Paragraph 6.

5.      With respect to Paragraph 7, UND denies EERC is a "business".  UND admits that EERC is a part of UND.  UND admits the remaining allegations in Paragraph 7.

6.      UND is without sufficient information to admit or deny the allegations contained in Paragraph 8 and therefore it denies the same.

7.      With respect to Paragraph 9, UND is without sufficient information to admit or deny the first two sentences, and therefore denies the same.  UND denies the third sentence of Paragraph 9.

8.      UND is without sufficient information to admit or deny the allegations contained in Paragraphs 10 and 11, and therefore it denies the same.  However, to the extent JH is alleging they own all IP under the 2001 contract with UND/EERC/, UND/EERC categorically denies the same.

9.      With respect to Paragraph 12, UND admits only that James Hardie Building Products, Inc. ("JHBP") and EERC entered into a 2000 contract to perform a study and a 2000 Confidentiality Undertaking.  UND denies the remaining allegations in Paragraph 12.

10.     UND admits the first sentence of Paragraph 13, but denies the remaining allegations in Paragraph 13.

11.    UND is without sufficient information to admit or deny the allegations contained in Paragraphs 14 and 15, and therefore it denies the same.

12.    With respect to Paragraph 16, UND admits only that EERC prepared a report, and the report is confidential information owned by JHBP.  UND denies the remaining allegations in Paragraph 16.

13.    UND admits the allegations contained in Paragraph 17.

14.    UND is without sufficient information to admit or deny the allegations contained in the first sentence of Paragraph 18, and therefore it denies the same.  UND denies the remaining allegations in Paragraph 18.

15.    UND denies the allegations contained in Paragraphs 19 and 20.

16.    With respect to Paragraph 21, UND admits only that total payments exceeded $1,600,000, but denies the remainder of the allegations contained in Paragraph 21.

17.    UND denies the allegations contained in Paragraphs 22, 23, 24 and 25.

18.    With respect to Paragraph 26, UND admits only that James Hardie filed three patent applications relating to cenosphere.  UND denies the remaining allegations in Paragraph 26.

19.    UND denies the first and second sentences of Paragraph 27.  UND is without sufficient information to admit or deny the remaining allegations in Paragraph 27, and therefore it denies the same.

20.    UND denies the allegations contained in Paragraph 28.

21.     With respect to Paragraph 29, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 29.

22.     UND denies the allegations contained in Paragraphs 30, 31, 32, 33 and 34.

23.     With respect to Paragraph 35, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 35.

24.     UND denies the allegations contained in Paragraphs 36 and 37.

25.     With respect to Paragraph 38, UND admits only that James Hardie asked EERC to give JH EERC's furnace.  UND denies the remaining allegations in Paragraph 38.

26.     UND denies the allegations contained in Paragraphs 39 and 40.

27.     With respect to Paragraph 41, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 41.

28.     UND denies the allegations contained in Paragraphs 42 and 43.

29.     With respect to Paragraph 44, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 44.

30.     UND denies the allegations contained in Paragraphs 45, 46, 47 and 48.

31.    With respect to Paragraph 49, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 49.

32.    UND denies the allegations contained in Paragraphs 50, 51 and 52.

33.    With respect to Paragraph 53, UND admits only that agreement requires notification to JHBP and James Hardie Research Pty, Ltd.  UND denies the remaining allegations in Paragraph 53.

34.    UND denies the allegations contained in Paragraphs 54, 55, 56, 57, 58, 59, 60, 61, 62, 63, 64 and 65.

35.    With respect to Paragraph 66, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 66.

36.    UND is without sufficient information to admit or deny the allegations contained in Paragraphs 67, 68 and 69, and therefore it denies the same.

37.    UND denies the allegations contained in Paragraphs 70, 71, 72 and 73.

38.    With respect to Paragraph 74, UND admits only that these are allegations of previously plead paragraphs which require no response, so UND incorporates its earlier answers, denials and qualifications in response to Paragraph 74.

39.    With respect to Paragraph 75, UND admits only that an actual controversy has arisen.  UND denies the remaining allegations in Paragraph 75.

40.    UND is without sufficient information to admit or deny the allegations contained in Paragraph 76, and therefore it denies the same.

41.    UND denies the allegations contained in Paragraphs 77 and 78.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

James Hardie's Third Amended Complaint fails to state a claim upon which relief may be granted.

### Second Affirmative Defense

James Hardie's claims are barred by the doctrines of fraud and unclean hands.

### Third Affirmative Defense

James Hardie, by its conduct or the conduct of others, is estopped from raising each and every cause of action or claim or any of them stated in the Third Amended Complaint.

### Fourth Affirmative Defense

James Hardie breached the contract.

### Fifth Affirmative Defense

James Hardie, by its conduct or the conduct of others, waived its rights to raise each and every cause of action or claim or any of them stated in the Third Amended Complaint.

### Sixth Affirmative Defense

The data and information James Hardie alleges to have been misappropriated does not satisfy the definition of "trade secret" under § 47-25.1-01.4 of the North Dakota Century Code.

### Seventh Affirmative Defense

Any alleged failure by UND/EERC to maintain the confidentiality of James Hardie's "trade secrets and other confidential information" is excused to avoid frustrating the purpose of the contract.

### Eighth Affirmative Defense

Any alleged failure by UND/EERC to maintain the confidentiality of James Hardie's "trade secrets and other confidential information" was caused by James Hardie's failure to perform its obligations under the contract, including its failure to notify UND of any intellectual property "potentially patentable or otherwise protectable and whether it relates to the building and construction industry or not."

### Ninth Affirmative Defense

James Hardie copied design drawings of others, used design information and drawings of UND, and has no original work.

### Tenth Affirmative Defense

To the extent James Hardie establishes liability and any damages, its damages must be reduced by any and all consequences James Hardie unreasonably failed to avoid and mitigate.

### Eleventh Affirmative Defense

UND is the owner of the intellectual property developed under the 2001 contract.

### Twelfth Affirmative Defense

UND has a license under the Agreement, to, at a minimum, do research.

### Thirteenth Affirmative Defense

JH is estopped from arguing infringement as any activity by UND/EERC was authorized by James Hardie.

### Fourteenth Affirmative Defense

As a separate alternative affirmative defense to James Hardie's Third Amended Complaint, UND alleges that the claims contained in James Hardie's Third Amended Complaint may be barred by any or all of the affirmative defenses contemplated by Rules 8 and 12 of the Federal Rules of Civil Procedure. The extent to which James Hardie's claims may be barred by one or more of said defenses, not specifically set out above, cannot be determined until UND has had an opportunity to complete discovery. Therefore, UND incorporates all said affirmative defenses as if fully set forth herein.

### COUNTERCLAIM

University of North Dakota ("UND"), for its Counterclaims against James Hardie Research Pty, Ltd., James Hardie Building Products, Inc., and James Hardie International Finance B.V., certain Furnace Equipment Designs, certain Furnace Equipment Specifications, and Does 1-10 (collectively hereinafter "Defendants"), states and alleges as follows:

### NATURE OF ACTION

1. This is an action for a temporary restraining order, preliminary injunction and permanent injunction precluding the Defendants from further misappropriating and further publicly disclosing UND's trade secrets, and requiring Defendants to take all necessary actions to avoid future misappropriation of UND's trade secrets.

2.     This is an action for damages for past misappropriation of trade secrets under the North Dakota Uniform Trade Secrets Act, N.D.C.C. § 45-25.1-01 et seq.

3.     This is an action for breach of contract, wherein the contract is governed by, construed, and enforced in accordance with the laws of the State of North Dakota.

4.     This is an *in rem* action to determine ownership of certain Furnace Equipment, certain Furnace Equipment Designs, and certain Furnace Equipment Specifications located in UND's facilities in Grand Forks, North Dakota.

## PARTIES

**A.**     **Plaintiff.**

*i.*     ***University of North Dakota.***

5.     The Plaintiff, University of North Dakota (hereinafter "UND," "Plaintiff" or "Plaintiff UND"), is the state university of North Dakota and is an arm of the State of North Dakota.   UND's principal place of business is located in Grand Forks, North Dakota 58202.

6.     UND is bringing suit on behalf of the Energy and Environmental Research Center (hereinafter "EERC"), a division of the University of North Dakota.

*ii.*     ***Energy and Environmental Research Center (EERC).***

7.     Founded in 1951, the EERC is a research facility of the University of North Dakota and operates as a non-profit division within the University of North Dakota.

8.     The EERC is a research, development, demonstration, and commercialization facility at UND recognized internationally for its expertise in cleaner, more efficient energy technologies.

9.    The EERC is believed to be the world's leading research and development center for coal based technologies.

10.    EERC research, development, and demonstration programs are designed to embrace all aspects of energy-from-coal technologies from cradle to grave, beginning with fundamental resource characterization and ending with waste utilization or disposal.

11.    Defendant James Hardie chose to work with the EERC "[b]ecause of the considerable background knowledge that [the EERC brought] to this Project".

**B.    Defendants.**

  ***i.    The James Hardie Entities.***

12.    Upon information and belief, James Hardie International Finance B.V. (individually hereinafter "JH International") is a company organized under the laws of the Netherlands, having its principal place of business at Unit 04-07, Atrium Building, Strawinskylaan 3007, 1077ZX Amsterdam, Netherlands.  Upon information and belief, JH International is the parent corporation in the James Hardie family of companies.

13.    Upon information and belief, James Hardie Research Pty, Ltd. (individually hereinafter "JH Research"), is a company organized under the laws of Australia, having a principal place of business at 10 Colquhoun Street, Rosehill, NSW 2142, Australia.

14.    Upon information and belief, James Hardie Building Products, Inc. (individually hereinafter "JH Building"), is a corporation organized under the laws of Nevada, having a principal place of business in Mission Viejo, County of Orange, California.

15.     Defendants James Hardie Research Pty, Ltd., James Hardie Building Products, Inc. and James Hardie International Finance B.V. are collectively referred to hereinafter as "the James Hardie Entities."

16.     The James Hardie Entities are an international group of corporations which manufacture and sell products for use in the building and construction industry (e.g., roofing tiles, siding and other building products from lightweight fiber cement).

17.     Upon information and belief, prior to working with the EERC, the James Hardie Entities had little or no experience in the production of cenospheres from fly ash.

18.     Upon information and belief, only since the end of 2000 has the James Hardie Entities taken an active interest in the commercial production of cenospheres from fly ash.

### ii.     Furnace Equipment, Designs and Specifications.

19.     This *in rem* action is being instituted against certain Furnace Equipment, certain Furnace Equipment Designs, and certain Furnace Equipment Specifications, located at EERC's laboratory facilities within Grand Forks, North Dakota for the purposes of clarifying title to the same.

20.     Portions of the Furnace Equipment at issue were originally created by the EERC in the 1980's for the purpose of studying coal combustion fluid bed technologies.

21.     In approximately 2003, a portion of the Furnace Equipment was then modified to serve as a material test reactor used for the James Hardie project.

22.     The Furnace Equipment was largely designed and entirely manufactured and assembled on the property of the University of North Dakota and has never left the EERC facilities in Grand Forks, North Dakota.

23.     Parts for portions of the Furnace Equipment were acquired by EERC during the course of the Contract with the James Hardie Entities.

24.     The Furnace Equipment is installed within this judicial district and shall remain herein until the completion of this action.

25.     The documents containing the Furnace Designs and Furnace Specifications are in this judicial district at the University of North Dakota and shall remain herein until the completion of this action.

   *iii.*     ***Does 1-10.***

26.     Upon information and belief, Does 1-10 are Defendants whose true names and capacities are unascertainable at this time.

27.     UND will seek leave to amend this pleading to state the true names and capacities of Does 1-10 when the same are learned by UND.

## BACKGROUND OF CASE

**A.     Cenospheres.**

   *i.*     ***"Natural" Cenospheres.***

28.     "Natural" cenospheres are spherical inorganic hollow micro particles found naturally in fly ash in coal burning power plants.[1]   A micrograph of exemplary cenospheres is illustrated below.

---

[1] Fly ash is a by-product of burning coal in coal burning power plants.



**EERC Micrograph of Cenospheres (July 14, 2003)**

29.     Cenospheres are typically thin-walled, hollow, glass spheres with a diameter of 10-200 microns.  Cenospheres typically have a specific gravity of less than 1.0, making them buoyant enough to float in water.

30.     Cenospheres typically make up significantly less than 5% of the fly ash produced in a coal burning power plant.  Through conventional separation processes, a portion of the cenospheres can be harvested from the fly ash.

31.     Because of their relative light weight and strength, cenospheres have numerous applications such as, but not limited to, filler material for building materials (e.g., lightweight concrete).  For example, building materials produced with cenospheres have increased strength with reduced weight, thereby improving the strength-to-weight ratio.

32.     Cenospheres also provide added buoyancy, better insulation properties, reduced shrinkage, and reduced warping.

33.     Cost effective harvesting of cenospheres from fly ash has been limited because of the relatively low percentage of natural cenospheres present in fly ash.

### ii.     "Manufactured" Cenospheres

34.     Various systems have been previously tested to produce "manufactured" cenospheres (i.e., cenospheres not produced naturally in a coal burning power plant).

35.     Traditional technology for the commercial production of manufactured cenospheres is prohibited because of manufacturing costs.

36.     There has been a long-felt need in the research and commercial sectors for a system of manufacturing cenospheres at commercially feasible levels.

## B.     EERC's Extensive Experience with Fly Ash and Cenospheres.

37.     Over the years, the EERC has acquired considerable background knowledge and trade secrets involving the use of fly ash and other coal combustion by-products.

38.     The EERC first began researching and experimenting with fly ash technologies in the 1950's.

39.     The EERC has expanded its research to include cenospheres and their manufacture since the early 1980's.

40.     The EERC established the Coal Ash Resources Research Consortium (CARRC) in 1985 for fostering the development of a better understanding of and value added opportunities for coal ash utilization.

41.     Prior to working with the James Hardie Entities, the EERC had conducted hundreds of research projects relating to fly ash and cenospheres.

**C.    James Hardie Contacted the EERC to Research Cenospheres.**

42.    In the year 2000, the James Hardie Entities contacted Dr. Steven Benson, Senior Research Manager of the EERC, whose responsibility is the focus of fundamentals of ash formation in thermal systems, to consider certain cooperative research projects based upon the EERC's reputation of being knowledgeable in the field of fly ash and other coal combustion by-products.

43.    On or about December 5, 2000, JH Building entered into a contract with the EERC for an initial project entitled "Survey of North American Power Stations" which included a brief literature search and a utility industry survey on existing cenosphere production from coal burning power plants in North America.

44.    On or about February 28, 2001, this initial project was completed by the EERC and the final report was provided to the James Hardie Entities on March 30, 2001.

**D.    July 2001 Contract.**

45.    Subsequently after completion of the initial contract, the parties agreed to conduct research to increase the amount of cenospheres produced from coal burning power plants or dedicated systems.

46.    Between approximately February 2001 and July 2001, the EERC and collectively JH Research and JH Building conducted extensive negotiations concerning the division of ownership of any new intellectual property that would result from the cooperative research.

47.    In or about July 2001, EERC entered into a contract (hereinafter "the Contract") with only JH Research and JH Building.

48.    The initial purpose of the Contract was for the EERC to perform confidential research and development involving fly ash and the production of cenospheres from fly ash which JH Building wished to use extensively in their business of manufacturing building products.

49.    The Parties to the Contract agreed that the research would involve confidential trade secret research and development concerning the formation of cenospheres and related matter, and that there would likely be mutual disclosures of confidential trade secret information, which the Parties agreed to keep confidential.

50.    The Parties agreed that pursuant to Article 13 of the Contract, the "*[a]greement shall be governed by, construed, and enforced in accordance with the laws of the state of North Dakota.*"

## E.    Furnace Equipment for Producing "Manufactured" Cenospheres.

51.    There are twenty-two written amendments to the Contract, one of which is particularly relevant to this Action.

52.    On March 5, 2003, the parties mutually expanded the scope of research and development through an amendment to the Contract.

53.    Pursuant to the March 5, 2003 amendment to the Contract, the EERC was to replace certain existing equipment within the furnace system at the EERC laboratory facilities in Grand Forks, North Dakota for the purpose of conducting testing of the production of manufactured cenospheres.

54.    By at least October 2003, the EERC modified the Furnace Equipment pursuant to the March 5, 2003 amendment.

55.     The Furnace Equipment, as modified by the EERC, was very successful in producing manufactured cenospheres.  In fact, the Furnace Equipment was able to produce manufactured cenospheres that comprised up to approximately 70% of the original input material, compared to the 5% produced by earlier processes.

56.     The Furnace Equipment was modified from time to time by the expert EERC engineers.

57.     The Furnace Equipment constitutes "equipment acquired" within the meaning of Article 6 of the Contract which specified: "*Title to equipment acquired shall vest with Contractor.*"

## F.     **EERC's Trade Secrets**.

### i.     *Trade Secrets Owned by EERC.*

58.     The EERC has created numerous trade secrets relating to fly ash and cenospheres that have been provided to and/or that were accessible by the James Hardie Entities under strict confidentiality.

59.     The trade secrets developed by the EERC, whether before or during the relationship with the James Hardie Entities, have significant value to the EERC and help protect the future cenosphere related technologies that the EERC will develop.

### ii.     *Trade Secrets Already Publicly Disclosed by James Hardie.*

60.     Despite the express confidentiality terms of the Contract, the James Hardie Entities misappropriated and publicly disclosed valuable trade secrets that are owned by the EERC.

61.     The James Hardie Entities have caused these EERC trade secrets to be disclosed in patent applications – knowing that those patent applications including EERC's trade secrets would be published – without the EERC's permission or prior knowledge.

**G.     James Hardie Entities' Secretly Filed Patent Applications.**

     *i.     Secret Filing of Patent Applications Without EERC's Knowledge.*

62.     Upon information and belief, by at least August 23, 2002, the James Hardie Entities began commissioning patent attorneys of Knobbe Martens to secretly file patent applications for technology developed, at least in part, by the EERC.

63.     At least five (5) United States and two (2) international patent applications were filed by the James Hardie Entities that included trade secrets and confidential information communicated to JH Building and/or JH Research by the EERC.

64.     The EERC communicated these trade secrets and confidential information to JH Building and JH Research subject to Articles 5 and 8 of the Contract.

65.     The only contribution of the James Hardie Entities to the content of the micrographs seen below is that the James Hardie Entities or someone on their behalf removed from the lower-left corner the letters "EERC" which labeled the micrographs as work product of EERC before including that EERC micrograph in the patent application. This is an example of the blatant misappropriation of the EERC's trade secrets:

 

**EERC Micrograph 3/6/2003**       **Fig. 3 of Int'l. Pub. No. WO 2004/101137**

66.    The James Hardie Entities did not provide prior notice to the EERC that trade secrets belonging to the University of North Dakota would be included or disclosed in these patent applications.

### *ii.    Misappropriation of the EERC's Trade Secrets.*

67.    At least five (5) of James Hardie Entities' patent applications have been "published" by the receiving government patent offices and are now publicly available to anyone with an Internet connection.

68.    Upon information and belief, the James Hardie Entities have additional patent applications pending that contain additional trade secrets of the EERC.

69.    The currently published patent applications include:

a.    International Publication No. WO 2004/101137 A1 ("METHODS FOR PRODUCING LOW DENSITY PRODUCTS"), published on November 25, 2004 by the World Intellectual Property Organization.

b.    U.S. Publication No. US 2004/0081827 A1 ("SYNTHETIC MICROSPHERES AND METHODS OF MAKING SAME"), published on April 29, 2004.

c.      U.S.   Publication   No.   US   2004/0080063   A1   ("SYNTHETIC MICROSPHERES AND METHODS OF MAKING SAME"), published on April 29, 2004.

d.      U.S.   Publication   No.   US   2004/0079260   A1   ("SYNTHETIC MICROSPHERES AND METHODS OF MAKING SAME"), published on April 29, 2004.

e.      International   Publication   No.   WO   2004/018090   A1   ("SYNTHETIC HOLLOW MICROSPHERES"), published on March 4, 2004.

70.      These published patent applications contain trade secrets and other confidential information that EERC disclosed to JH Building and JH Research during the course of their confidential cooperative research.

71.      Not only was the EERC wholly excluded from all of the James Hardie Entities' patent applications, but the James Hardie Entities did not disclose to the EERC the preparation of these patent applications until nineteen months after James Hardie Entities had filed at least three of these applications.

72.      By revealing EERC's trade secrets and confidential information to the public without prior written consent, the James Hardie Entities not only misappropriated the trade secrets of the EERC but also materially breached Article 8 of the Contract.

*iii.      EERC's Trade Secrets Publicly Disclosed by the James Hardie Entities*

73.      In   U.S.   Publication   Nos.   2004/0080062   A1,   2004/008182   A1, 2004/0079260 A1, the James Hardie Entities misappropriated the trade secrets of the EERC by at least including micrographs developed by the EERC in Figures 3-17.

74.    In   U.S.   Publication   Nos.   2004/0080062   A1,   2004/008182   A1,
2004/0079260 A1, the James Hardie Entities misappropriated the trade secrets of the
EERC by at least including Examples 1-7 which contain significant amounts of EERC
trade secret information.

75.    In International Publication No. WO 2004/018090 A1, the James Hardie
Entities misappropriated the trade secrets of the EERC by at least including
micrographs developed by the EERC in Figures 3-18.

76.    In International Publication No. WO 2004/018090 A1, the James Hardie
Entities misappropriated the trade secrets of the EERC by at least including Examples
1-6, and 8 which contain significant amounts of EERC trade secret information.

77.    In International Publication No. WO 2004/101137 A1, the James Hardie
Entities misappropriated the trade secrets of the EERC by at least including
micrographs developed by the EERC in Figures 3-16.

78.    In International Publication No. WO 2004/101137 A1, the James Hardie
Entities misappropriated the trade secrets of the EERC by at least including
Formulations   1A-3B   which   contain   significant   amounts   of   EERC   trade   secret
information.

**H.    James Hardie Demands Furnace Equipment, Designs and Specifications.**

79.    On or about February 2004, the James Hardie Entities demanded that the
EERC return the Furnace Equipment.

80.    In a Complaint filed by JH Building and JH International discussed *infra*,
the James Hardie Entities demanded the return of the Furnace Equipment Designs and
the Furnace Equipment Specifications.

81.     The James Hardie Entities' demands for return of the Furnace Equipment repudiated the provisions of Article 6 of the Contract which specified that "[t]itle to equipment acquired shall vest with [the EERC]."

82.     The James Hardie Entities' demands for return of the Furnace Equipment Designs and the Furnace Equipment Specifications repudiated the provisions of Article 6 of the Contract.

I.      **JH Building and JH International File California Complaint.**

83.     On May 5, 2004, JH Building and JH International filed a Complaint (hereinafter "JH Complaint") against the EERC in Superior Court of California, County of San Bernardino, San Bernardino District.

84.     On June 4, 2004, the California Action was removed from the Superior Court to the U.S. District Court for the Central District of California, Eastern Division, in Riverside, California.

85.     On June 9, 2004, James Hardie filed a First Amended Complaint in the U.S. District Court for the Central District of California.

86.     On July 12, 2004, before any responsive pleading was filed, counsel for the parties stipulated to a Stay of All Proceedings Pending Mediation, and the U.S. District Court in California Entered the Stay, which has been in effect until December 15, 2004.

87.     UND filed a Motion to Transfer the action to federal court in North Dakota. That Motion to Transfer was granted.

## COUNT ONE
## MISAPPROPRIATION OF NORTH DAKOTA TRADE SECRETS

88.    UND realleges and incorporates the above paragraphs as though fully stated herein.

89.    This count is brought against the JH Research, JH Building, JH International, and Does 1-10.

90.    This count is brought under the North Dakota Uniform Trade Secrets Act, N.D.C.C. § 45-25.1-01 et seq.

91.    JH Building and JH Research acquired the EERC's trade secrets and confidential information under a contractual provision whereby they were required to guard the confidentiality of the trade secrets for a period of no less than twenty-five (25) years absent prior written consent from the EERC, of which there has been no consent.

92.    EERC never has agreed that JH Building and JH Research could disperse EERC's trade secrets throughout the international companies that form the James Hardie Entities, and, in particular, never has agreed that those trade secrets could be transferred to the Netherlands company (James Hardie Int'l Finance B.V.).

93.    Upon information and belief, CGC Products has acquired the EERC's trade secrets and other confidential information from the James Hardie Entities and is assisting the James Hardie Entities in commercializing the trade secrets of the EERC.

94.    EERC did not provide JH Building or JH Research prior written consent to use or publish any of EERC's trade secrets or confidential information.

95.    By acquiring EERC's trade secrets, dispersing them around the world to other members of the James Hardie Entities, and then filing and causing publication of the patent applications worldwide, and doing so without express or implied consent of

EERC, the James Hardie Entities, along with the active and knowing participation by the Knobbe Martens firm, misappropriated the EERC's trade secrets.

96.   EERC faces a continuing threat of further irreparable injury through possible publication of additional confidential information (hereinafter referred to as the "Undisclosed Trade Secrets") that have been communicated by the EERC to the James Hardie Entities, but has not yet been disclosed so far as the University of North Dakota knows.   These Undisclosed Trade Secrets are made vulnerable by the threat of additional as-of-yet-undisclosed patent applications that have been, or may have been, or could at any time be filed by the James Hardie Entities, their attorneys, or related parties.

97.   EERC's Undisclosed Trade Secrets have independent economic value via the improvements and efficiency they add to the body of knowledge concerning the commercial production of manufactured cenospheres.

98.   The past misappropriation of trade secrets by James Hardie Entities has caused EERC irreparable damage, only some of which is compensable by money damages.

99.   Upon information and belief, James Hardie Entities' misappropriation of EERC's trade secrets and confidential information has been willful and malicious.

100.   Unless enjoined by the Court, Defendants' misappropriation of the EERC's Undisclosed Trade Secrets will cause immediate and irreparable harm and injury to UND, the amount of which will be difficult to ascertain.

101.   UND has no adequate remedy at law and is entitled to immediate, temporary, preliminary, and permanent injunctive relief against Defendants from engaging in further such unlawful conduct.

## COUNT TWO
## BREACH OF NORTH DAKOTA CONTRACT

102.   UND realleges and incorporates each of the above paragraphs as though fully stated herein.

103.   This claim is brought against JH Building and JH Research.

104.   This is a claim for breach of contract with respect to the above-stated Contract that, by its own terms, is governed under North Dakota state law.

105.   Article 8 of the Contract specifically requires the James Hardie Entities to maintain the confidentiality of data, know-how, and other information by taking "*reasonable precautions to safeguard and treat the Information as confidential*".

106.   The James Hardie Entities have not maintained the confidentiality of trade secrets and other confidential information provided by the EERC.

107.   The James Hardie Entities have not taken reasonable precautions to safeguard or treat the information as confidential as required under the Contract.

108.   JH Building and JH Research are in breach of the Contract and have caused irreparable injury to UND, only some of which is compensable by money damages.

109.   Unless enjoined by the Court, Defendants' continued breach of the Contract will cause immediate and irreparable harm and injury to UND, the amount of which will be difficult to ascertain.

110.   UND has no adequate remedy at law and is entitled to immediate, temporary, preliminary, and permanent injunctive relief against Defendants from engaging in further such unlawful conduct.

## COUNT THREE
## *IN REM* ACTION TO DECIDE OWNERSHIP OF CERTAIN FURNACE EQUIPMENT

111.   UND realleges and incorporates the above paragraphs as though fully stated herein.

112.   This claim is brought against the above-identified Furnace Equipment, Furnace Equipment Designs and Furnace Equipment Specifications located in Grand Forks, North Dakota.

113.   In approximately October 2003, EERC completed the re-design and re-assembly of the Furnace Equipment at the EERC's laboratory facility in Grand Forks, North Dakota.

114.   The Furnace Equipment at issue is, and at all times since it was assembled, has been located at the Energy & Environmental Research Center (EERC), on the campus of the University of North Dakota, specifically located at 15 North 23rd Street, Grand Forks, North Dakota 58202-9018.

115.   That Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications are within the territorial jurisdiction of the State of North Dakota, and the Courts of the State of North Dakota may exercise *in rem* jurisdiction over the same, which includes the authority to determine and adjudicate the true ownership of the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications against the World.

116.   The Furnace Equipment is "equipment acquired" as defined under Article 6 of the Contract.

117.   The EERC is the rightful, sole owner of the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications pursuant to Article 6 of the Contract.

118.   The James Hardie Entities have wrongfully demanded the return of the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications, attempting to contradict the express terms of Article 6 of the Contract.

119.   Despite not being a party to the original Contract, JH International now wrongfully asserts ownership over the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications.

120.   Unless this Honorable Court determines the proper ownership of the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications as against the entire world, the EERC will not be certain who owns the same, and will be powerless to protect itself against competing claims of ownership therefore.

121.   UND requests judgment that ownership of the Furnace Equipment, Furnace Equipment Designs, and Furnace Equipment Specifications vest solely in the EERC.

## COUNT FOUR
## BREACH OF CONTRACT

122.   UND realleges and incorporates the above paragraphs as though fully stated herein.

123.   Pursuant to Article 10 of the Contract, the James Hardie Entities had a duty to provide thirty days written notice of their intention to terminate the Contract.

124.   The James Hardie Entities failed to provide written notice of their intention to terminate the Contract and thereby breached their duty and obligation under the Contract.

125.   At the time of the breach by the James Hardie Entities, UND had fully performed all of its contractual obligations.

126.   As a direct and proximate result of the James Hardie Entities' breach of the Contract, UND has suffered monetary loss and damages.

### PRAYER FOR RELIEF

WHEREFORE, UND prays that this Court enter judgment against Defendants as follows:

I.   For a judgment in favor of UND and against Defendants on all causes of action alleged herein;

II.   Issue a temporary restraining order, preliminary injunction, and permanent injunction precluding Defendants, and each of their attorneys, agents, associates, insurers, and representatives, from:

> a. using, misappropriating and/or publicly disclosing the trade secrets created by the EERC;
>
> b. filing or causing to be filed any new patent application(s) containing any of the trade secrets belonging to the University of North Dakota;
>
> c. filing any amendment(s) and/or response(s) to official actions of the U.S. Patent Office or any other Patent Office, if said amendment(s) and/or

response(s) contain any of the trade secrets belonging to the University of North Dakota; or

d. allowing any as-of-yet-non-published pending patent application(s) containing any of the EERC's trade secrets from being published;

III.     Issue a temporary restraining order, preliminary injunction, and permanent injunction requiring Defendants, and each of their attorneys, agents, associates, insurers, and representatives, to take all reasonable and prudent actions, pursuant to N.D.C.C. § 47-25.1-02(3), to prevent any non-published pending patent application(s) containing any of the EERC's trade secrets from being published;

IV.     Require the Defendants to file with the Court, and to serve on UND within thirty (30) days after service of the injunction, for a report in writing under oath setting forth in detail the manner and form in which each said Defendant complied with the Court's order;

V.     That Defendants be ordered to account to UND for any and all profits derived by each said Defendant;

VI.     That Defendants be ordered to pay over to UND all damages that UND has sustained as a consequence of Defendants' acts complained of herein, subject to proof at trial, and that UND be awarded Defendants' profits derived by reason of said acts;

VII.     Award UND exemplary damages in an amount of twice the award pursuant to N.D.C.C. § 47-25.1-03;

VIII.     Award *in rem* judgment to UND declaring that the Furnace Equipment is "equipment acquired" as defined under Article 6 of the Contract, and ordering that

ownership of the Furnace Equipment vests solely in the EERC as against the rest of the World;

IX.     Award *in rem* judgment to UND declaring that the documents containing the Furnace Equipment Drawings and Furnace Equipment Specifications are owned solely by the EERC as against the rest of the World;

X.      Award UND any and all other specific, general, and compensatory damages according to proof;

XI.     Award UND reasonable attorneys' fees, expenses and costs; and

XII.    Any other relief that the Court deems proper and just.

### JURY DEMAND

UND respectfully requests a jury trial of all issues triable to a North Dakota jury.

Date: December 20, 2005.

Sara Gullickson McGrane
North Dakota Registration No. 04937
Robert L. Bach, #3736
Special Assistant Attorney General of North Dakota
220 South Sixth Street, Suite 2200
Minneapolis, MN 55402-4302
(612) 339-6321

Michael S. Neustel
Special Assistant Attorney General of North Dakota
North Dakota Registration No. 05452
2534 South University Drive, Suite 4
Fargo, North Dakota 58103
Telephone: (701) 281-8822
Facsimile: (701) 237-0544

ATTORNEYS FOR THE UNIVERSITY OF NORTH DAKOTA