IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| University of North Dakota, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | **MEMORANDUM OPINION** |
| vs. | ) | **AND ORDER GRANTING** |
| | ) | **UND/EERC'S PETITION FOR** |
| James Hardie Research Pty, Ltd., an | ) | **CERTIFICATION TO APPEAL** |
| Australian Corporation, James Hardie | ) | |
| Building Products, Inc., a Nevada | ) | |
| Corporation, James Hardie Int'l Finance | ) | Civil File No. 2:04-cv-152 |
| B.V., a Netherlands Corporation, certain | ) | |
| Furnace Equipment, certain Furnace | ) | |
| Equipment Designs, certain Furnace | ) | |
| Specifications, and Does 1-10, | ) | |
| | ) | |
| Defendants. | ) | |
| ─────────────────────────── | ) | |
| | ) | |
| James Hardie Building Products, Inc. and | ) | |
| James Hardie Int'l Finance B.V., | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| vs. | ) | Civil File No. 2:05-cv-44 |
| | ) | |
| Energy & Environmental Research | ) | |
| Center, and Does 1 through 50, inclusive, | ) | |
| | ) | |
| Defendants. | ) | |

Before the Court is a Petition by the University of North Dakota and its division, the Energy and Environmental Research Center (collectively "UND/EERC"), for certification pursuant to 28 U.S.C. § 1292(b) of the Memorandum Opinion and Order on James Hardie Parties' Motion for

1

Partial Summary Judgment entered by the United States District Court for the District of North Dakota on June 27, 2006 ("Memorandum Opinion and Order").

## A.     Statement of Facts.

UND/EERC is a public research institution which has significant expertise in processes and by-products of coal-fired power plants.

The JH parties are private companies (all closely related), which collectively pursue the business of producing materials used in the building and construction industry.

In July of 2001, the Energy and Environmental Research Center, a department of the University of North Dakota, entered into a contract with James Hardie Research Pty Limited ("JHRP") and James Hardie Building Products ("JHBP") ("2001 Agreement"). Under the 2001 Agreement, the term "Sponsor" refers to JH, and the term "Contractor" refers to UND/EERC. As to the Memorandum Opinion and Order, the key provisions of the 2001 Agreement are as follows:

> [5.4] All IP, patentable or not, developed under this Project, hereinafter referred to as "New IP", that relates to the commercial production of Cenospheres, for use in products and systems used or consumed in the building and construction industry ("Sponsor's Domain") produced either in a power station or in any other coal-burning plant, or in any other production facility specifically for this purpose will be the sole and exclusive property of Sponsor with full rights to exploit, license, sublicense and assign and otherwise deal with the Sponsor's Domain.
>
> [5.5] Any IP owned or at the disposal of the Contractor (either pre-existing or developed after the date of this Agreement) required by the Sponsor to exploit the New IP ("Background IP") will be available to the Sponsor and all its licensees, sub licensees, assignees and other third parties with rights to the New IP in the Sponsor's Domain on a perpetual royalty free worldwide license and the Contractor will take all steps and sign all documents that may be desirable or necessary for the Sponsor to secure title to the New IP and license and sub license rights to the Background IP in the Sponsor's Domain. Because of the considerable background knowledge that Contractor is bringing to this Project, due consideration will be given to the cumulative contributions made by both parties in developing IP, and good-faith

2

negotiations will be conducted in determining revenue distribution from such IP and in this regard, under no circumstances will the Contractor be entitled to an amount in excess of USD 1.00 per ton of Cenospheres produced by or for the Sponsor and used by the Sponsor.

[5.6] For all other uses of New IP identified in the preceding paragraph that are identified by Contractor which are exclusive of Sponsor's Domain and are uses that Sponsor has not previously identified and commercialized or licensed, Contractor shall have a perpetual, royalty-free, exclusive worldwide license with rights to sublicense. The Contractor will make it a condition of any license or sub license of New IP—exclusive of the Sponsor's Domain—that Cenospheres produced will not be sold directly of indirectly into the Sponsor's Domain (namely, products and systems used and consumed in the building and construction industry). However, if Contractor identifies such uses, in the event that Sponsor will have further developed know-how and IP in commercializing the large-scale production of Cenospheres, due consideration will be given to the cumulative contributions made by both parties in developing IP, and good-faith negotiations will be conducted to determine revenue distributions from such IP; under no circumstances will the Sponsor be entitled to an amount in excess of USD 1.00 per ton of Cenospheres produced.

[5.7] Any other IP, patentable or not, that is developed under this Project, but does not specifically relate to the commercial production of Cenospheres for use in products or systems used or consumed in the building and construction industry either in a power station, or in any other coal-burning plant, or in any other production facility for this purpose, will be the sole and exclusive property of Contractor.

On November 14, 2005, JH brought a Motion for Partial Summary Judgment for a Declaration of Ownership of Intellectual Property Rights under the 2001 Agreement. On December 23, 2005, UND/EERC opposed this Motion. The Court held a hearing on the matter on April 27, 2006. On June 27, 2006, the Court issued its Memorandum Opinion and Order. The Court determined that the 2001 Agreement is not ambiguous as to ownership of intellectual property and that:

1. JHBP and JHRP own all intellectual property developed under the project that is connected to a process for creating cenospheres if the resulting

3

          cenospheres can be used in products and systems used or consumed in the building and construction industry.

    2.    The James Hardie entities own the rights to those uses of the new intellectual property that it identified in February and December 2004.

**B.**     **Statement of Questions of Law.**

The District Court certifies the following controlling questions of law for appeal pursuant to 28 U.S.C. § 1292(b):

    1.    Whether the district court correctly held the 2001 Agreement is not ambiguous.

    2.    Whether the district court correctly held JHBP and JHRP own all the intellectual property developed under the project that is connected to a process for creating cenospheres if the resulting cenospheres can be used in products and systems used or consumed in the building and construction industry.

    3.    Whether the district court correctly held JH owns the rights to those uses of the new intellectual property that it identified in February and December 2004.

**C.**     **Reasons for Certification.**

Under 28 U.S.C. 1292(b), federal courts of appeal may exercise jurisdiction over an interlocutory order where the district court has certified a controlling issue of law. Acton v. City of Columbia, Missouri, 436 F.3d 969, 973, n. 2 (8th Cir. 2006); 28 U.S.C. 1292(a)(1), (b). Specifically, section 1292(b) provides:

> When a district judge, in making in a civil action an order not otherwise appealable under this section, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation, he shall so state in writing in such order. The Court of Appeals which would have jurisdiction of an appeal of such action may thereupon, in its discretion, permit an appeal to be taken from such order, if application is made

to it within ten days after the entry of the order: Provided, however, That application for an appeal hereunder shall not stay proceedings in the district court unless the district judge or the Court of Appeals or a judge thereof shall so order.

28 U.S.C. 1292(b).

Section 1292(b) establishes three criteria for certification: the district court must be of the opinion that (1) the order involves a controlling question of law; (2) there is substantial ground for difference of opinion; and (3) certification will materially advance the ultimate termination of the litigation. Bullock v. Baptist Memorial Hosp., 817 F.2d 58, 60 (8th Cir. 1987); White v. Nix, 43 F.3d 374, 377 (8th Cir. 1994).

### 1. The questions certified involve controlling questions of law.

Under North Dakota law, when a contract is reduced to writing, the intention of the parties is to be ascertained from the writing alone if possible . . . ." N.D.C.C. § 9-07-04; Meide v. Stenehjem, 2002 ND 128, ¶ 7, 649 N.W.2d 532, 535 (N.D. 2002). "Construction of a written contract is a question of law." Meide, at ¶ 7, 649 N.W.2d at 535; Garofalo v. Saint Joseph's Hosp., 2002 ND 149, ¶ 7, 615 N.W.2d 160 (N.D. 2000); Moen v. Meidinger, 547 N.W.2d 544, 546 (N.D. 1996) ("The construction of a written contract to determine its legal effect is a question of law for the court to decide . . . ."). N.D.C.C. section 9-07-12 requires that a contract be interpreted as a whole. Moen, 547 N.W.2d at 547. Whether a contract is ambiguous is a question of law. Meide, at ¶ 7, 649 N.W.2d at 535. A contract is ambiguous when rational arguments can be made for different positions about its meaning. Id.; Moen, 547 N.W.2d at 547 ("a contract is ambiguous when reasonable arguments can be made for different positions on its meaning").

The contract interpretation questions decided in the Memorandum Opinion and Order are

controlling in this case. The interpretation of the 2001 Agreement and the ownership rights under the 2001 Agreement are at the very heart of this case. The Parties agree that this is the most significant issue, and that lack of finality on this issue precludes early resolution. The issues surrounding interpretation of the 2001 Agreement decided in the Memorandum Opinion and Order are serious issues to the conduct of the litigation, both practically and legally. If certification to appeal the Memorandum Opinion and Order is not granted at this time, the Parties will be forced to incur substantial expense and time in a trial to prepare for an appeal that is inevitably going to take place. Allowing immediate appeal will help set the stage for more orderly disposition of this case and of the remaining questions. A trial at this time on the other claims would be duplicative because the Memorandum Opinion and Order will eventually be appealed. After the appeal, whatever issues remain may be tried once, thereby preserving judicial resources.

In addition, many of the other claims in this case hinge on the interpretation of the 2001 Agreement and ownership of intellectual property under the 2001 Agreement. For example, although UND/EERC disagrees, JH asserts that under the Court's interpretation of the 2001 Agreement in its Memorandum Opinion and Order, the property at issue with respect to JH's replevin claim and UND/EERC's in rem action to decide ownership of furnace equipment represents intellectual property that is owned by JH. JH also asserts that under the Court's interpretation of the 2001 Agreement in its Memorandum Opinion and Order, UND/EERC's misappropriation of trade secrets claim fails because JH either owns or has authority to use any such intellectual property.

### 2. There is substantial ground for difference of opinion.

UND/EERC's asserts the 2001 Agreement allocates ownership of particular intellectual

property rights to UND/EERC and to JH. The 2001 Agreement gives JH ownership rights to jointly-develop intellectual property that "relates to the commercial production of Cenospheres, for use in products and systems used or consumed in the building and construction industry." (2001 Contract, ¶ 5.4). The 2001 Contract explicitly gives UND/EERC ownership rights as follows: "Any other [intellectual property], patentable or not, that is developed under this Project, but does not specifically relate to the commercial production of Cenospheres for use in products or systems used or consumed in the building and construction industry either in a power station, or in any other coal-burning plant, or in any other production facility for this purpose, will be the sole and exclusive property of [UND/EERC]." (2001 Contract, ¶ 5.7). Thus, UND/EERC alleges it owns all jointly-developed intellectual property under the 2001 Contract which falls <u>outside</u> the building and construction industry, in the sense that it is not used in products or systems used or consumed in the building and construction industry. UND/EERC also maintains that there exists ambiguity in applying the intellectual property ownership provisions of the 2001 Contract.

JH's interpretation of the 2001 Agreement is that it owns the intellectual property developed under the [2001 Agreement] relating to the commercial production of cenospheres.

In this Court's February 4, 2005, Order, the Court concluded: "[T]he plain language of section 5.4 and 5.5 grants JH the sole and exclusive rights to the intellectual property relating to the use of cenospheres for use in products and systems used or consumed in the building and construction industry." (Order dated February 4, 2005 p. 7). In this Court's May 2, 2005, Order, the Court concluded: "As long as the commercial process creates cenospheres that can be used in products and systems used or consumed in the building and construction industry, it is the sole

7

property of JH." (Order dated May 2, 2005, p. 4). In this Court's June 27, 2006, Memorandum Opinion and Order, the Court concluded:

1. JHBP and JHRP own all intellectual property developed under the project that is connected to a process for creating cenospheres if the resulting cenospheres can be used in products and systems used or consumed in the building and construction industry.

2. The James Hardie entities own the rights to those uses of the new intellectual property that it identified in February and December 2004.

3. There is a genuine issue of material fact as to whether the project developed intellectual property that relates to creating cenospheres that cannot be used in the building and construction industry.

There is substantial ground for difference of opinion as to ownership of intellectual property under the 2001 Agreement.

### 3. Certification will materially advance the ultimate termination of the litigation.

The Parties have made significant efforts to get this action resolved. The decisive Memorandum Opinion and Order has prevented settlement of this case. If the issues are not resolved by an immediate appeal, the Parties will incur considerable expense to resolve the remaining issues in this action at trial simply to get ready for this appeal. Until the Parties have a final ruling on the interpretation of ownership of intellectual property under the 2001 Agreement, the case will not be resolved. Once these issues are decided on appeal, whatever issues remain may be tried once or the case may be resolved informally by the parties.

**BY REASON OF THE FOREGOING, IT IS HEREBY ORDERED:**

The following questions decided in the June 27, 2006, Memorandum Opinion and Order are hereby certified pursuant to 28 U.S.C. § 1292(b) because each question involves a controlling

question of law as to which there is substantial ground for difference of opinion and an immediate appeal may materially advance the ultimate termination of the litigation:

    1.    Whether the district court correctly held the 2001 Agreement is not ambiguous.

    2.    Whether the district court correctly held JHBP and JHRP own all the intellectual property developed under the project that is connected to a process for creating cenospheres if the resulting cenospheres can be used in products and systems used or consumed in the building and construction industry.

    3.    Whether the district court correctly held JH owns the rights to those uses of the new intellectual property that it identified in February and December 2004.

**IT IS SO ORDERED.**

Dated this 18th day of October, 2006.

                                                  /s/   Ralph R. Erickson
                                         Ralph R. Erickson, District Judge
                                         United States District Court